R. C. ABELL, ADMINISTRATOR OF TILLY GILBERT, *v.* JOHN HOWE, ROSWELL HARRIS AND C. M. WILLARD.

*Trusts and Trustees. Notice. Principal and Agent. Attorney and Client. Chancery. Jurisdiction.*

Where a bequest is made in a will *in trust* to the executor, and an administrator *de bonis non* wrongfully perverts the trust funds and is removed by the probate court, (never having given bonds as trustee and never having rendered an account to the probate court as administrator,) and a successor is appointed, the latter may invoke a court of equity to reach the funds and bring them to the use provided in the will.

Where a purchaser of trust property has notice of the trust, before the money to the full value of the property is paid over and is beyond his power to reach, he cannot be regarded an innocent *bona fide* purchaser.

Where an attorney has notice of a trust, the law will presume the notice was communicated to the client, and if this knowledge comes to the attorney or agent while acting in another and different transaction, the client and principal will be affected with notice.

Therefore where such recusant administrator invested such trust funds in a house and lot, taking the title to himself without mentioning the trust, and his creditor attached the same but abandoned the suit upon the debtor's conveying the same to the creditor's attorney with directions to pay the creditor his debt out of the avails, and the attorney knowing of the trust when he took the title holds the avails claiming that he should first pay said debt out of them, it was *held* that the creditor was not an innocent purchaser for value, and that had he entered his suit and obtained judgment and had the premises set off on execution he would have obtained no title because his creditor had none in equity, and in a suit in chancery in favor of the present administrator against such recusant administrator, creditor and attorney, a decree was made for the orator against all the defendants for the amount of the money in the attorney's hands, received from the sale of the premises, which he holds for the benefit of the creditor, and to the amount of his debt, and against the executor and attorney for the residue received by the attorney in said sale, with interest from the time of the sale.

BILL IN CHANCERY. The object of the bill was to reach certain trust funds which had been wrongfully perverted. The defendants filed answers which were traversed and testimony was taken tending to support the allegations of the bill and answers. At the September term, 1870, WHEELER, chancellor, the bill was *pro forma* dismissed, from which the orator appealed. The clause of the will making the bequest in question was as follows:

— The remaining fourth part of said residue and remainder it is my will should remain in the hands of my two executors, and in the hands of the survivor of them and their successors in said office, for the benefit of my son, James Jervis Gilbert, during his life, hoping that he will need none of it, or at any rate no more than the interest, so long as he is able to labor. Nevertheless, it is my intention to leave the disbursement of this part to the discretion of my executors and to the survivor of them and to their successors in said office. And in case of infirmity or misfortune, if my said son James Jervis should, in the judgment of my said executors, need a portion of the principal for his support, they are authorized to let him have so much thereof as may to them appear necessary for the purpose aforesaid. At his decease, whatever may remain of said fourth part, I give to all his children, to be equally divided between them and their respective heirs forever, without any reference to what I have before given to the two by his first wife.

The other facts in the case are sufficiently stated in the opinion of the court.

*R. C. Abell,* for the orator.

*C. M. Willard* and *J. Prout,* for the defendants, argued that the orator could not maintain the suit as administrator *de bonis non, etc.* By the will the office of executor and trustee was *united* in the same person. But that does not change the administrator's relation to the property committed to his charge and administration. He represents the estate in the capacity of executor or administrator, and the trust in the capacity of trustee — by implication at least,—but they are distinct interests and offices, entirely separate in their relation and incidents. The statute makes them so. *Wood* v. *Brown,* 34 N. Y., 337 ; *Craig* v. *Craig,* 3 Barb. Ch. R., 77 ; *In matter of Wardsworth,* 2 Ib., 381 ; Hill on Trustees, 305, 306.

It does not appear that the orator has given a bond as trustee. This is indispensable to his right to control and administer this trust. Gen. Sts., 424, §§ 1, 5 ; Hill on Trustees, 708, and note ; *Brown* v. *Hobson,* 3 A. K. Mar., 1206 ; *Conklin* v. *Edgerton's Adm'r,* 21 Wend., 429 ; S. C., 25 Wend., 224.

His bond as administrator is not sufficient. It does not relate to his trust duties and liabilities, as distinguished from his liabilities and duties as administrator, and it would be competent for him to show, in an action upon it, that no property came into his hands unadministered belonging to the estate. Again, it is not alleged, and it does not appear, that there was any order of the probate court directing the defendant Howe to pay over or convey the trust property to the orator or his successor, upon any legal accounting or settlement. There was neither accounting or order to pay over. Gen. Sts. 424, § 3—4th clause ; Gen. Sts., 382, § 2 —2d clause ; Gen. Sts., 425, § 9 ; *Probate Court* v. *Kimball,* 42 Vt., 320 ; *Parsons* v. *Lyman,* 32 Conn.; 566 ; *Barney* v. *Saunders,* 16 Howard, 541.

The administrator's bond covers only his proper duties to the estate : 1st, to pay debts — 2d, to distribute the estate according to law under the order of the probate court. *Olmstead* v. *Bush,* 27 Conn., 535 ; Am. B. of F. M., appeal from probate court, 27 Conn., 354.

If this fund belongs to the estate, the administrator has a legal remedy under § 7 of Gen. Sts., 390, or, he may recover in an action of assumpsit against Willard.

The orator is not entitled to a decree upon another ground, viz., that Harris had no notice of the trust, and Willard had none in that transaction. 2 Sugden, 537 and note 2, 541 and note 1; Hill on Trustees, 248, 763, 771; *Preston* v. *Tubbin*, 1 Vernon, 286; *Warwick* v. *Warwick*, 3 Atk., 290; *Worlsey* v. *Earl of S.*, Ib., 392; *Hine* v. *Dodd*, 2 Atk., 275; *Louther* v. *Carlton*, Ib., 241; *Porter* v. *Bank of Rutland*, 19 Vt., 410.

By the terms of the will, the administrator *de bonis non* has no right to this trust fund. Its language is opposed to that view. The power committed to the executors is to some extent discretionary and personal, and is to be exercised by one only in case of the death of the other, and contemplates that a vacancy thus occasioned should be filled. *Bradford* v. *Belfield*, 2 Eng. Ch., 265; *Cole* v. *Wade*, 16 Vesey, 27; Hill on Trustees, 442, 736.

The statute is not inconsistent with this express direction of the will, and does not authorize the probate court to change it in that particular. Gen. Sts., 425, §§ 8 and 9.

The opinion of the court was delivered by

REDFIELD, J. The bill states that the testator, Tilly Gilbert, made a bequest of one fourth part of the residue of his property to his executors *in trust* for his son James Jervis Gilbert. That Zimri Howe, the sole acting executor, paid all the debts and legacies of the testator except this provision for James Jervis Gilbert; that on the 29th of March, 1864, John Howe was appointed administrator *de bonis non* of the estate of Tilly Gilbert with the will annexed; and that, on the 15th of June, 1864, at the request of James Jervis Gilbert, he purchased with said trust funds a house and lot in Fairhaven, and took the title to himself, without naming the trust. That defendant Harris attached said house, as the property of John Howe, by the agency of defendant Willard, his attorney. Said writ was never entered in court, but on the 1st of February, 1869, said Howe conveyed said house and lot to said Willard. John Howe having become insolvent and having

removed from this state, he has been removed as administrator, by order of probate court, and the orator appointed in his place. Willard sold and conveyed the premises to Farmer for $1350.00 ; and claims, as the attorney of Howe, to retain of the avails of the sale about $700 to pay the debt of Harris.

I.   It is insisted that the orator, as administrator *de bonis non* with the will annexed of the estate of Tilly Gilbert, cannot maintain this bill.   Neither Zimri Howe nor his successor John Howe have ever settled their administration accounts in probate court, or in any way been discharged from their trust as administrators of the estate.   The " one fourth the residue " of the estate has never been severed or set apart from the general assets of the estate by any order or decree of the court.   Neither have given bonds, as trustee ; nor have such funds been placed in the hands of either as trustee.   In the case of *Newcomb* v. *Williams & others*, 9 Met., 525, A. & B. were joint executors of a will and gave a joint bond in probate court:   The will created a trust, and imposed the duty upon B. of administering such special trust.   The executors settled their account as executors, and the balance was retained in the sole possession of B., who gave no bond as trustee.   Ch. J. Shaw, in giving the opinion of the court, says: " It seems to us very clearly that, by these proceedings, and by operation of law, the executors became responsible for the personal property of their testator, and *that they must remain thus responsible until some legal discharge is shown*."   Again he says, page 534, " if the trust is cast upon them as executors, the execution of such trust is a duty superadded to their official duties as executors, and until they qualify themselves, and assume to act in their separate capacity as trustees, the bond to perform their duties as executors binds themselves and their sureties to the execution of such trust."   See also *Conkey* v. *Dickinson*, 13 Met., 51, *Hall* v. *Cushing*, 9 Pick., 395, *Dorr* v. *Wainwright*, 13 do., 328, *Towne* v. *Ammidown*, 20 do., 535.   We have no occasion to decide in this case to what extent the sureties of an executor would be bound, where the executor's account had been settled in probate court, and such executor had proceeded to administer the balance found in his hands as a special trust under the will without qualifying

himself by giving bonds as trustee, and without order of the court passing the funds into his hands as trustee. We could readily conceive a case, where an executor had fully settled his executor's account, and by open and unequivocal acts had taken possession of the whole balance found in his hands, according to the will, and with the implied assent of the probate court, and had squandered such assets in the administration of a protracted trust, where there would be a patent equity in excusing the sureties of the executor from responding to such *devastavit*. But we see no reason in this case why John Howe could not properly have been called into probate court to make a final settlement for all assets that came into his hands as administrator ; and if all claims upon such assets are found to be satisfied, he should be required to qualify himself, and the funds by order of court passed into his hands as *trustee*. And if he should decline thus to qualify himself, another should be appointed trustee, who would execute the required bond.

And John Howe having perverted the assets of the estate to the purchase of real estate, without authority of the probate court, or warrant of the will, and sought to appropriate this property to the payment of his private debts, he was very properly removed, and required to settle his account. And we think it the right and duty of the orator to " gather up the fragments that remain " of said estate, and bring them into probate court, and place them in order and due course of administration according to the will. John Howe was never *discharged* as administrator because he had completed its duties, but *removed* because he refused to perform his duty.

James Jervis Gilbert is not entitled by the terms of the will to the possession and use of the fund as a beneficiary, but it is an active trust, requiring the action and discretion of the trustee. And it would seem, upon general equity principles, that the orator, as the representative of the estate and the will, is the very person to invoke a court of equity, that he may reach these funds, which have been wrongfully perverted, and appeal to any and every legitimate agency to bring these funds to the use provided in the will.

II. It is insisted that defendant Harris is a *bona fide* purchaser, without notice of the trust. Harris had paid no value, and had discharged no debt. Howe conveyed the estate to Willard, and authorized him to apply a portion of the avails to pay Harris's debt. Harris is not an innocent purchaser for value, for he has *paid* nothing. When a purchaser of trust property has notice of the trust before the money to the full value of the property is *paid over*, and beyond his power to recall, he cannot be regarded an innocent *bona fide* purchaser. *Willoughby* v. *Willoughby*, 1 T. R., 763, 769 ; 2 Story's Eq., 754, § 1502.

But it is claimed that Harris was a creditor of John Howe, and obtained a valid lien by his attachment. That lien was dissolved, if any was had, when the suit was abandoned and the writ not entered in court. Yet if the writ had been entered in court, and judgment rendered, and execution levied, all in legal form, Harris would " take in execution all that belonged to his debtor, and nothing more." And as John Howe had, in equity, no title, his creditor obtained none by his levy and set-off. *Hart, Leslie & Warren* v. *Farmers & Mechanics' Bank*, 33 Vt., 252 ; 2 Story's Eq., § 1503, b. ; 3 Redfield on Wills, 538 ; *Hackett* v. *Calender*, 32 Vt., 97 ; *Poor* v. *Woodburn*, 25 Ib., 234.

III. Willard, the attorney of Harris, was aware of the trust ; and if the attorney had notice of the trust, the law will presume the notice was communicated to the client ; and if this knowledge comes to the attorney or agent while acting in another and different transaction, the client and principal will be affected with notice. *Hart et al.* v. *F. & M. Bank, ut supra.* And the same rule is established in England. *Dresser* v. *Norwood*, 17 C. B., (N. S.,) 466.

The great office of a court of equity, in matters of trust, is to follow trust property alienated and perverted and restore it to its place, that it may perform the duties assigned it ; and we are relieved of all embarrassment in this case, lest we might wrong some party who had become innocently involved while dealing with the trust. No person possessing these attributes appears in this case.

The decree of the court of chancery, dismissing, *pro forma,*

52

the orator's bill, is reversed, and the case remanded, with directions to enter a decree for the orator against all the defendants for the amount of the money in said Willard's hands, received from the sale of the premises, set forth in the bill, which he holds for the benefit of said Harris, and to the amount of Harris's debt ; and a decree against the defendants Howe and Willard for the residue of the sum received by said Willard on sale of said property, not otherwise accounted for in probate court or paid to the orator,—interest to be computed from the time of such sale, and the orator recover his costs.