CARLOS S. SHERMAN v. RODNEY C. ABELL, NATHANIEL FISH, ADMINISTRATOR OF HANNAH B. HOWE'S ESTATE, FRANKLIN A. BARROWS, JOHNSON S. BENEDICT, S. H. GRISWOLD, JAMES A. PAIGE, AND CAROLINE H. PAIGE.*

[IN CHANCERY.]

*Jurisdiction of Probate Court. Jurisdiction of Chancery. Interest of the Heir in Estate of the Ancestor before its Settlement. Contribution to the Payment of Debts among Purchasers of the Heir's Interest. Practice.*

It is the exclusive province of the probate court, to determine and adjudicate the question of allowance or disallowance of claims against the estates of deceased persons ; and the final judgment of that court in that behalf, unappealed from, is conclusive. A court of equity will not interfere to control the probate court, or those acting under its authority, while in the discharge of their proper and appropriate functions.

Where claims are fairly allowed against an estate, it is the duty of the administrator to pay them as far as he has assets ; and so far from a court of equity interfering to prevent or hinder him from the discharge of such duty, he may invoke its aid when necessary, to assist him therein.

Our statute (Gen. Sts. ch. 52, §5) makes the personal estate of the deceased first chargeable with the payment of debts and expenses ; and the heir takes such estate subject to the rights of creditors, and has nothing therein to convey, except what may remain after the payment of the debts against the estate, and the expenses of administration.

Until such personal estate is exhausted, he who purchases the interest of the heir in the real estate of his ancestor, cannot be compelled to contribute to the payment of the ancestor's debts.

Where the orator was entitled to have the bill taken as confessed in the court of chancery, against some of the defendants, for want of an answer, and it not appearing that any such entry was made before the case passed to the supreme court, the supreme court ordered the bill to be taken as confessed, and a decree for the orators against such defendants.

APPEAL from the court of chancery. The bill was preferred on the 10th of May, 1870, and the temporary injunction therein prayed for, granted on the 12th, and the bill served on the 21st, of said May.

The bill alleged, that on the 29th of October, 1842, one Tilly Gilbert made his will, wherein he directed that a remaining fourth part of the residue of his estate, should remain in the hands of

* This case was decided at the February term, 1873.

his two executors therein named, and in the hands of the survivor
of them and their successors, for the benefit of his son James
Jarvis Gilbert, during his life, and therein expressed the hope and
wish that the said James would need none of it, or no more than
the interest, so long as he should be able to labor, nevertheless,
declaring his intention to be, to leave the disbursement thereof to
the discretion of his said executors, and to the survivor of them,
and to their successors in said office, and in case of infirmity or
misfortune to said James, and in the judgment of said executors,
he should need a portion of the principal for his support, then the
said executors were authorized by said will to let him have so
much thereof as might appear to them necessary for the purpose
aforesaid, but whatever might remain thereof at the decease of
the said James, the said Tilly gave to the children of the said
James, to be equally divided among them and their heirs, without
reference to what he had before given to, the two children by
his first wife, and also expressing it to be his will, that all sums
of money which might at any time remain in the hands of his said
executors, should be by them loaned out on annual interest, upon
such security as they might deem safe ; that the said Tilly Gilbert
died on the 15th of September, 1850, and his will subsequently
probated ; that some time prior to the 29th of March, 1864, said
trust created by said will, became vacant, and on that day one John
Howe was duly appointed administrator *de bonis non* with the
will annexed, of said Tilly Gilbert's estate, who thereupon
accepted said appointment, and gave bond as required by law,
which was signed by Hannah B. Howe as surety, whereupon the
estate remaining unadministered passed into the hands of the said
John, to be held and administered by him as directed in said will ;
that the said Hannah died intestate on the 15th of March, 1868,
leaving a considerable estate, consisting of real estate, bank stock
and other personal property, amounting in all to about eighteen
thousand dollars, and leaving two children, the said John and
Mrs. Caroline H. Paige, then and still the wife of James A. Paige,
her only heirs ; that letters of administration were never taken
upon the estate of the said Hannah, but said heirs paid and dis-
charged all known debts owing by said estate, with a view and
for the purpose of settling and dividing the same between them,
and saving the expenses of administration ; that they did, on the
6th of April, 1868, execute to each other. conveyances of their
respective shares, the said James and Caroline conveying to the
said John, upon the expressed consideration of $1,650, all their
right, title, and interest in and to all the real estate of which the
said Hannah died seised, except a certain piece described, and

the said John, on the same day, upon the like expressed consideration, conveying all his right, title, and interest in and to said excepted parcel of land, to the said Caroline.

The bill further alleged, that among the assets belonging to the estate of the said Hannah at the time of her decease, there were $2,500 of stock in the First National Bank of Fairhaven, $1,000 in the National Bank of Rutland, $500 in the Castleton National Bank, and $500 in the National Bank of Poultney, and that said stock was, on the division of said estate between the said John and Caroline as aforesaid, transferred and conveyed to the said John, who, in consequence thereof, or of some understanding to that effect between him and the said Caroline and her husband, became the owner thereof, or was authorized to sell and dispose of the same, to enable them to close and divide said estate between them as aforesaid; that afterwards, on the 21st of April 1868, at the solicitation of the said John, and with the knowledge, approbation, and approval of the said Caroline and her husband, the orator purchased of the said John, and paid him a full consideration therefor, the said shares of stock in the National Bank of Rutland, amounting to the sum of $1,000, and the said shares of stock in the National Bank of Castleton, amounting to the sum of $500, and also the said shares of stock in the National Bank of Fairhaven, amounting to $2,500, and the stock in the National Bank of Poultney, amounting to the sum of $500, but that the stock in the National Banks of Fairhaven and Poultney, was purchased for Charles Jackman, a minor under the guardianship of his mother, Rebecca A. Jackman; that the orator and the guardian of said Jackman, had ever since received the dividends on said stock, as they were justly and equitably entitled, and in whose behalf, as his next friend, the orator brings this bill, as well as in his own behalf; that on the 14th of April, 1868, the said John, for the consideration of $550, conveyed by his warranty deed to Franklin A. Barrows, the parcel of land conveyed him by the said Caroline and James as aforesaid, and which belonged to their mother's estate; that on the 16th day of said April, in consideration of $2,100, the said John conveyed another parcel of said land to Johnson S. Benedict; that on the 6th day of May 1868, in consideration of $1,450, the said John conveyed another parcel of said land to S. H. Griswold; that the said Caroline still owned and possessed the premises conveyed to her as aforesaid by the said John, and that the said Barrows, Benedict, and Griswold, still owned and possessed the said several parcels conveyed to them as aforesaid, and that they severally purchased the same as aforesaid, well knowing that the same originally belonged to the estate

of the said Hannah, and that the said John derived his title as aforesaid, and that said estate was not settled by a due, legal course of administration, but was settled and divided as above set forth, and that said lands were chargeable, as well as all the other property of said estate, with the payment of the debts of said estate, if any remained outstanding and unpaid.

The bill further alleged that on the 12th of June, 1868, the said John removed from this state, and resided in Florida, and was without property and insolvent; that on the 24th of June, 1869, by order and decree of the probate court, he was removed from his administratorship of the estate of the said Tilly Gilbert, and Rodney C. Abell appointed in his place and stead, who accepted said appointment and gave bonds, as required by said court, and was still acting as such administrator; that at no time, while said John was administrator as aforesaid, nor since his removal from said trust as aforesaid, had the probate court having jurisdiction of the settlement of said estate, made any order or decree requiring the said John to render and settle his administration account with said court, if any such account exists; but that he did, voluntarily, on the 1st of March, 1870, render his account, from which said court ascertained a balance of $2,996.30 of the funds belonging to the said estate, which order, decree, or finding that said fund belonged to said estate, the orator averred to be erroneous and illegal; that said balance or fund, whatever it might be, was a trust fund, set apart by the said will of the said Gilbert, for the use and benefit of the said James and his children, as therein provided, and was wholly derived from that fourth part of the residue and remainder of his estate, which was devised in trust for that purpose, and that if said John was accountable in respect thereto, it was to the beneficiaries under said will, or the successors in said trust expressly created by said will, and not to the estate of said Tilly Gilbert, or the administrator of his estate.

The bill further alleged, that by force of the terms and provisions of said will, the executors therein named were created trustees for the purpose of administering said trust property; that it was by the terms of said will to be administered by them jointly, or by the survivor, and by their successors in said trust, and that they were jointly authorized to apply and appropriate the avails of said trust property, or the principal thereof, to the use of the said James, and that if any amount was in the hands of the said John, unaccounted for, it arose from the sale of the property so devised in trust, which sale was illegal and unauthorized; also, that said trust was vacant, having never been filled as contemplated by said

will, and that said Abell, administrator as aforesaid, had no right, power, or authority—it being a *joint* power to administer said property and trust—to interfere with or control said trust property, or the avails thereof, simply as sole administrator of the estate of the said Tilly Gilbert, and that under such circumstances, the said Abell being the only and sole administrator of said estate, the probate court had no power, right, or authority to commit said trust property, or trust funds, to the care, custody, and management of the said Abell; that the said Abell, unjustly seeking to get the control and management of said trust property and fund, to pay himself some pretended claim, liability, or advances claimed to have been made on behalf of the said James, on the 8th day of November, 1869, procured the probate court to appoint Nathaniel Fish administrator of the estate of the said Hannah, who accepted said appointment, and who, with said Abell as his surety, gave bonds to said probate court, as required by law, and also, on the same day, procured the appointment of commissioners upon said estate, who had allowed against said estate the said sum pretended to be due from the said John as aforesaid, and upon the bond of the said Hannah which she signed with the said John as his surety as aforesaid, which allowance the orator averred was unauthorized and illegal, the probate court having never given leave or authorized any proceeding whatever on said bond, and there never having been any breach of the conditions thereof by the said John, in refusing or neglecting to comply with any orders or decrees made by said court touching his administration of said estate; that said commission on the estate of the said Hannah, expired on the 8th day of May, 1870, but that said commissioners had not returned their report to the probate court, so that the orator, or any other party interested in said estate, could appeal from the said allowance, as the orator desired and intended; that said claim was the only claim presented for allowance, or allowed by said commissioners against said estate; yet, although it had not been definitely ascertained or determined that there was any debt against said estate, or that it was or will be necessary to sell any of the property that ever belonged to said estate, for the purpose of paying debts, the said administrator of the estate of the said Hannah, on the 28th of April, 1870, by virtue of an order of the probate court, advertised for sale, and intended to sell, all the aforesaid bank stock purchased by the orator for himself and the said Jackman of the said John as aforesaid, as the property of the estate of the said Hannah, that may be necessary for the payment of the debts and expenses of the settlement of said estate; that said sale was advertised for the 14th day of May then

next, all of which was in violation of the rights of the orator and the said Jackman ; that the avails of said sale, if allowed to be made, the said Fish intended to pay over to the administrator of the estate of said Tilly.

The bill further alleged, that if said claim, under the circumstances aforesaid, was a valid claim—as he insisted it was not—against the estate of the said Hannah in favor of the estate of the said Tilly, that, upon the facts, it was a charge upon all the property, real and personal, of the estate of the said Hannah, as between the orator and the said Barrows, Benedict, Griswold, and Paige, and as between them, a charge upon the real property that was conveyed to the said Caroline by the said John as aforesaid ; and that said debt should be apportioned between them, if said estate was liable therefor, or the said Caroline and her husband decreed to pay the same, as in justice and equity they or she ought, and the orator's stock which he purchased as aforesaid, released and discharged therefrom.

Prayer, that the said Fish and Abell be perpetually enjoined from enforcing said pretended claim in favor of the estate of the said Tilly Gilbert against the estate of the said Hannah ; or that the said Barrows, Benedict, Griswold, Caroline H. Paige and James A. Paige, may be decreed to contribute towards the payment of said claim in proportion to the value of the property they purchased as aforesaid ; or that the said Caroline and James be decreed to pay the same ; and for general relief ; and that in the meantime, the said Fish, administrator as aforesaid, may be temporarily, and until the further order of the court, enjoined from selling the bank stock aforesaid, or any part thereof, and which he had advertised for sale as aforesaid.

The defendants Abell and Fish answered, substantially admitting most of the allegations of fact in the bill, and alleging that soon after the said John was removed as administrator as aforesaid, he presented his administration account to the probate court for settlement, and that such proceedings were thereupon had, that the court, on the first day of March, 1870, found and decreed a balance of $2,996.30 in the hands of the said John, due to the estate of the said Tilly Gilbert ; that the commissioners upon the estate of the said Hannah returned their report to the probate court on the 10th day of May, 1870 ; that it was recommitted to the commissioners on the 27th of said May, and returned to said court the same day ; that therein the commissioners allowed to the probate

court of the district of Fairhaven, for the benefit of the estate of the said Tilly Gilbert, on the said bond of the said John and Hannah, given as aforesaid, the sum of $2,000, and that neither the administrator of the estate of the said Hannah, nor the said John or Caroline, appealed from such allowance ; and insisted that the proceedings of the probate court were final and conclusive in the premises. The defendants Barrows, Benedict, and Griswold, demurred to the bill for want of equity ; but the defendants Paige and wife made no answer thereto. The answers were traversed, and testimony taken.

The court, at the September term, 1871, rendered a decree for the orator, *pro forma*, according to the prayer of the bill, and overruled the demurrer, *pro forma*. Appeal by the defendants.

*J. Prout* and *N. P. Simons*, for the orator.

When this suit was commenced, John Howe was not fixed with any liability upon his administration bond, nor was his surety or her estate. At that time, there had been no such breach of the conditions of the bond as to entitle the administrator of Tilly Gilbert to any remedy upon it. Although the probate court had ascertained the amount due from the said John, no order was made requiring him to pay over the amount to his successor in the trust or administration. This is necessary to any suit or proceeding upon the bond, or to fix any liability upon the surety. *Bank of Orange Co.* v. *Kidder et al.* 20 Vt. 519 ; *Probate Court* v. *Kimball*, 42 Vt. 320 ; *Probate Court* v. *Chapin*, 31 Vt. 373. Such also are the terms of the bond.

The bond of the admininistrator is a security for all interested in the estate—heirs, legatees, or creditors ; and it can be prosecuted only in the way provided by statute. It is a statute claim, so to speak, and should not go before commissioners at all for allowance. That is not the appropriate way of enforcing it. Gen. Sts. 426, §§ 2, 3, 4 ; *Waterman* v. *Wright*, 36 Vt. 164 ; *Judge of Probate* v. *Hibbard*, 44 Vt. 597. Even in *Admr. of Sargent's Estate* v. *Admr. of Kimball's Estate*, 37 Vt. 320, where a contrary doctrine seems to be held, the judge says that in proceedings before commissioners, " the same course of proceeding

71

provided by statute in actions on probate bonds, cannot, of course, be followed ;" but that presents no difficulty in pursuing the remedy before commissioners. And in the next sentence it is pointed out wherein the course of proceeding is different, and that is, no declaration or pleadings are required before commissioners. But whatever the form of proceeding, or before whatever tribunal prosecuted, it is a virtual prosecution of the bond ; and being taken to the probate court, it can only be prosecuted by leave of that court, and then only by giving a bond to the adverse party. Gen. Sts. 426, § 2. Neither requisite was complied with in this case. Again, there can be no recovery against the surety, until demand made upon her or her administrator. Morrison's Dig. (N. H.) 307, §§ 104, 106 ; 315, § 259; 308, §§ 118, 121, 122.

Upon the facts conceded in this case, we insist that John Howe was trustee under the will of Tilly Gilbert, was not acting as administrator of his estate, and could be removed only upon notice. Gen. Sts. 376, § 46 ; 424, §§ 1, 2, 3. The *administration* of the estate had been closed before John Howe was appointed administrator. Nothing remained but the residue devised in trust, as the bill alleges, both answers admit, and as the settlement of the account of the said John Howe shows. The whole account was for disbursement to James Jarvis Gilbert. Clearly, this is a case where the administrator's account had been settled in probate court, and where he had proceeded to administer the residue as a " special trust under the will, without qualifying himself by giving bonds as trustee," although there was no order of court passing the funds over to him as such trustee. This was done with the implied assent of the probate court, and equitably the surety is not liable on his bond for his acts as such trustee. *Abell, admr.* v. *Howe et als.* 43 Vt. 403 ; Gen. Sts. 376, § 46 ; 424, §§ 1, 2, 3. Again, this residue, or any balance due on account of it, does not belong to the estate of Tilly Gilbert, or to his administrator *de bonis non*, as such, and it cannot be recovered in the name of the administrator, whoever he may be ; it belongs to J. J. Gilbert, legatee in the will. *Heirs of Adams* v. *Adams et al.* 22 Vt. 62.

If there is any valid claim upon any portion of the property belonging to the estate of Mrs. Howe, it is a charge upon the en-

tire estate, and the present owners should be required, under the circumstances, to contribute a proportionate share to pay it. Debts are a charge upon the real, as well as the personal property of a deceased party ; and a purchaser from the heirs, takes it subject to that burden. With this qualification the heirs can convey title. 1 Story Eq. §§ 579, 580; Gen. Sts. 380, § 29; *Austin* v. *Bailey*, 37 Vt. 219. Purchasers deriving title from them, when the estate is insolvent or indebted, stand somewhat in the attitude and relation of sureties, and either of them, equitably, should not be compelled to relieve the property from this common burden or charge. 1 Story Eq. §§ 592, 493, 503 ; *Root* v. *Collins*, 34 Vt. 173. It is true, that as between *creditors* and the estate, heirs, or legatees, the personal constitutes the primary fund for the payment of debts ; and, generally, it will be so applied. But the rule is not without exception. It will not be so applied when it is otherwise directed in a will, or when there are equities from which it appears that this should not be done. Gen. Sts. 389, § 5 ; 1 Story Eq. § 571. Such an equity is found in the facts of this case. The division of the estate between the heirs, which was in the nature of a purchase from each other, shows that, as between them, the debts due from the estate are a charge upon their respective shares. Their shares, therefore, ought to contribute ratably, to relieve the property of the burden existing upon it. Otherwise the division is made unequal. If the owner of the personal is made to pay it, undoubtedly he could make the owner of the real contribute. Those deriving title under these heirs, " sit in their seats," subject to their liabilities in respect to the property. *Austin* v. *Bailey, supra ;* Redf. Wills, Part 2, 872, § 23 ; *Graham* v. *Dickson*, 3 Barb. Ch. 169 ; *Couch* v. *Delaplaine*, 2 N. Y. 397 ; 1 Am. Ch. Dig. 374, § 11 ; *Livingston* v. *Livingston*, 3 Johns. Ch. 157 ; *Clowes* v. *Dickinson*, 5 Johns. Ch. 239. Were the net proceeds of the estate in court subject to this charge, can there be any doubt as to how the court would equalize the burden ? The caprice of a creditor should not be allowed to control the action of the court under such circumstances, and defeat the equitable claim of contribution. *Spottswood's* case, 55 Eng. Ch. 344.

Apparently the title of the orator to the bank stock in ques-

tion is good. It was transferred on the books of the bank, and the orator ever since has been receiving the dividends upon it. *Austin* v. *Bailey, supra; Swift* v. *Kennison's Estate,* 39 Vt. 473.

This title acquired by a sale from the heirs, after this lapse of time, cannot be defeated by an administrator's sale, but only by his action to recover it. Gen. Sts. 390, §§ 7, 8 ; *Roys* v. *Roys,* 13 Vt. 543 ; *Burnell, admr.* v. *Malony,* 36 Vt. 636 ; *Sewell* v. *Perrin,* 4 Allen, 277.

The defendants are not entitled to any relief on the allegations of their answer. *Eddleston* v. *Collins,* 52 Eng. Ch. 15.

*R. C. Abell, pro se* and Fish.

*Edgerton & Nicholson,* for Barrows, Benedict, and Griswold.

The orator assigns as substantial grounds for equitable interference in the settlement of Mrs. Howe's estate by the probate court, that the defendant is not the legal representative of the estate of Tilly Gilbert, and has no right or authority to act as the manager of the trust created by said will, because it does not appear from the copy of the record filed in the case, that there was notice to Mr. Howe of the proceedings for his removal from his position as administrator. He had neglected and misapplied the trust, converted the trust moneys to his own use, removed from the state, and was confessedly insolvent. The probate court had no jurisdiction of his person or his estate. He had assisted in selling and disposing of the estate of his surety, and the court ought to have removed him long before it finally did remove him. Gen. Sts. ch. 51, § 12. He has never in any way indicated any dissatisfaction with the order removing him ; but, on the contrary, has recognized the defendant as the proper representative of the estate of Tilly Gilbert. It is not claimed but that he had notice of the proceedings in the probate court ; but rather that the record does not show that he had such notice. Howe was the only party affected by the removal, and his remedy was by appeal. The orator was in no way prejudiced by Howe's removal ; it only terminated the acts for which Mrs. Howe's estate was liable.

Again, the orator claims that from the nature of the trust, the defendant, as administrator with the will annexed, was not entitled

to the care of the trust property. This objection has already been passed upon in *Abell, admr.* v. *Howe et als.* 43 Vt. 403.

It is also claimed that the probate court never authorized the prosecution of the bond. That objection is not tenable. Gen. Sts. ch. 60, § 4 ; *Sargent* v. *Kimball,* 37 Vt. 322.

Also, that there has been no breach of the conditions of the bond, the probate court never having made any order or decree requiring John Howe to settle his account as administrator, or to pay over the balance found in his hands on the settlement of his account, to his successor. There is no question but that there must be an order of the probate court for the payment of *debts* and *legacies* by an administrator or executor, before a suit can be maintained on his official bond. *Orange County Bank* v. *Kidder,* 20 Vt. 519 ; *Probate Court* v. *Kimball,* 42 Vt. 320. Such order is made necessary by § 38, ch. 53 of the Gen. Sts. But where the probate court removes an administrator, his power ceases. It then becomes his duty to turn over the property in his hands to his successor ; and the right is conferred on the successor to demand and receive the property of the estate. Nothing is to be found in the statute authorizing an order by the probate court, requiring an administrator who has been removed, to pay over the funds in his hands to his successor. None of the adjudicated cases in this state, go as far as the orator here claims. *In re Scott's Account,* 36 Vt. 297 ; *Probate Court* v. *Chapin,* 31 Vt. 373 ; *In re Merrill Bingham,* 32 Vt. 330 ; *Probate Court* v. *Slason,* 23 Vt. 306 ; *Probate Court* v. *Van Duzer,* 13 Vt. 140.

All fraud or collusion is expressly denied in the answers, and there is no claim of anything of that kind in the bill. No claim has been or can be made that the administrator of Mrs. Howe was not a suitable person to discharge the duties of that trust ; and there is no allegation that he did not urge every objection that has been urged by the orator, against the allowance of this claim.

The probate court has exclusive jurisdiction of the matter of estates, and chancery will only interfere in aid of the powers of the probate court, and where, from some defect in the adequate means, it was not in their power to do the same justice in the same

way, which could be done in a court of equity, and which it seemed desirable should be done in that particular case.  *Heirs of Adams* v. *Adams*, 22 Vt. 50 ; *Morse* v. *Slason*, 13 Vt. 306.

The opinion of the court was delivered by

ROYCE, J.  The orator prays for an injunction against the defendant Abell as administrator with the will annexed of Tilly Gilbert, and defendant Fish as administrator of Hannah B. Howe, restraining them from the enforcement and collection of the bond which was allowed against the estate of Hannah B. Howe, out of said estate.  Some of the grounds upon which the orator predicates his right, were considered and decided in the case of *Abell, admr. of Tilly Gilbert* v. *Howe et als*. 43 Vt. 403.  It was then claimed, as it is now, that the bequest in the will of Tilly Gilbert to James Jarvis Gilbert, was a trust fund in the hands of the executors and administrators of Tilly Gilbert, and that they held said funds as trustees ; that they constituted no part of the estate of Tilly Gilbert, and consequently that they should prosecute or defend in matters connected with said funds in their character of trustees, and not as executors or administrators.  The court held that it was the right and duty of the administrator, to gather up the fragments that remain of said estate, and bring them into the probate court, and place them in order and due course of administration, according to the will, so that the right and duty of the administrator, as such, to control and administer this fund, was there conclusively settled.

The objection that the suit was prematurely brought, for the reason that it did not appear that Howe had been ordered by the probate court to pay over the funds in his hands to his successor, was virtually overruled, by the court's retaining jurisdiction of the suit, and allowing it to proceed to a final decree.  So that the orator's right to equitable relief, must stand upon the facts stated in the bill and answers, and appearing from the proofs.  Upon the settlement of John Howe with the probate court, it was ascertained that he had in his hands, belonging to the estate of Tilly Gilbert, the sum of $2,996.30.  It stands admitted that John Howe was at that time wholly insolvent, and a non-resident of the

state—so that the only remedy left to the administrator for the recovery of the amount due from John Howe, was against the surety (Hannah B. Howe) upon the bond given by him to the probate court. If the default of John Howe had been ascertained in the lifetime of Hannah B. Howe, the bond might have been prosecuted against her in the name of the probate court, for the benefit of the estate of Tilly Gilbert. Upon her decease the bond stood as a claim against her estate. Under our statute, it was the exclusive duty and office of the probate court to determine and adjudicate the question of its allowance or disallowance, and the final judgment rendered in such proceeding is conclusive. A court of equity will not interfere to control the probate court, or those acting under its authority, while in the discharge of their proper and appropriate functions. When claims are fairly allowed against an estate, it becomes the duty of the administrator to pay them as far as he has assets; and so far from a court of equity interfering to prevent or hinder him in the discharge of this duty, he may invoke its aid when necessary, to assist him.

The bank stock, that the orator seeks to exempt from liability to pay the above claim, he derived title to from the heirs of Hannah B. Howe. Our statute makes the personal estate first chargeable with the payment of debts and expenses of administration. Gen. Sts. ch. 52, § 5. The right of the heirs to the personal estate, was subordinate to the rights of creditors, and they had nothing in such estate to convey, except what might remain after the payment of the debts against the estate and the expenses of administration. The orator has shown no equity that entitles him to an injunction restraining the administrator from administering upon so much of the personal estate of Hannah B. Howe as may be necessary for the payment of the claims allowed against her estate, and the expenses of administration.

The orator further claims, that if said claim is to be paid out of the estate of Hannah B. Howe, that the defendants, who have acquired title to a portion of the real estate belonging to said estate, from the heirs-at-law, should contribute to such payment. The payment of debts and expenses of administration, rested primarily upon the personal estate, and until that was exhausted, no resort

could be made to the realty. These defendants are entitled to the full benefit of this principle. In making their purchases, they had the right to understand that the estate they were purchasing, could only be made chargeable in the event that the personal estate should be insufficient to respond to the legal claims against the estate. On the other hand, the purchaser of the personal estate is chargeable with the knowledge which the law presumes, that his title was subject to be defeated if such estate should be required for the payment of claims that had been, or might be, allowed against said estate, and the expenses of administration. So there are no such facts appearing as would justify a decree for contribution.

The *pro forma* decree for the orator against Abell and Fish, is reversed, and cause remanded, with mandate, that the bill as to them, be dismissed with costs. The order of said court overruling the demurrer of the defendants Barrows, Benedict, and Griswold, is reversed, and mandate that the demurrer is allowed, and bill as to them to be dismissed with costs. The defendants James A. and Caroline H. Paige, not having filed any answer to the bill, the orator was entitled to have the bill taken as confessed against them. As no such record seems to have been made before the cause passed to this court, the bill will be taken as confessed against them, and decree to be entered for orator against them accordingly.